UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-20803-GAYLES

**RICHARD SIMRING, on behalf of himself and all others similarly situated,**

    Plaintiff,

v.

**LVNV FUNDING, LLC,**

    Defendant.

_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant's Motion to Compel Arbitration and Stay Proceedings (the "Motion to Compel"), [ECF No. 21], and Plaintiff's Cross-Motion to Defer Ruling Pending Arbitration-Specific Discovery (the "Motion for Discovery"), [ECF No. 23]. The Court has reviewed the Motions and the record and is otherwise fully advised. For the reasons that follow, the Motion to Compel shall be granted, and the Motion for Discovery shall be denied.

## BACKGROUND

In this putative class action, Plaintiff Richard Simring ("Plaintiff") contends that Defendant LVNV Funding, LLC ("LVNV") violated several consumer protection laws while attempting to collect on Plaintiff's defaulted credit card account. In the Motion to Compel, LVNV argues that any disputes relating to Plaintiff's account must be submitted to mandatory arbitration.[1]

---

[1] To support its Motion to Compel, LVNV relies on the Declaration of Michael Wiese, the Vice President of Collections and Recovery at Credit One Bank (the "Wiese Declaration") [ECF No. 21-1]; the Declaration of Patricia Sexton, a paralegal at Resurgent Capital Services, LP and the authorized representative and custodian of records for LVNV with respect to Plaintiff's Account (the "Sexton Declaration") [ECF No. 21-6]; and the documents attached thereto.

1

### I. The Account

On February 29, 2020, Plaintiff applied for a Visa credit card account through Credit One Bank's ("Credit One") website. [ECF No. 21-1 ¶¶ 4-5]. In completing his application, Plaintiff received and agreed to multiple terms and conditions, including a provision mandating arbitration of all disputes. *Id.* ¶ 5. On March 4, 2020, Capital One created Plaintiff's credit card account (the "Account") and mailed Plaintiff his credit card ending in 8116 and a hard copy of the agreement (the "Card Agreement"). *Id.* ¶ 5; [ECF No. 21-3]. Plaintiff activated his credit card on March 13, 2020. In using the Account, Plaintiff accepted the terms of the Card Agreement. [ECF No. 21-3 at p. 2] ("You accept this Agreement when you use the Account."). Plaintiff does not dispute that he received the Card Agreement and opened and used the Account. On July 18, 2021, the Account was charged off,[2] leaving a balance owed of $999.13. [ECF No. 21-1 ¶ 9].

### II. The Arbitration Provision

Plaintiff's Card Agreement contains an arbitration provision which provides in pertinent part:

> **Agreement to Arbitrate:** You and we agree that either you or we may, without the other's consent, require that controversies or disputes between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This agreement to arbitrate is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., and (to the extent State law is applicable) the laws of the State of Nevada.
>
> . . .
>
> **Covered Claims:** Claims subject to arbitration include, but are not limited to, any controversies or disputes arising from or relating in any way to your Account; any transactions involving your Account . . . any collection of debt related to your Account . . . any controversies or disputes based on any theory of law, whether

---

[2] "Charged-off debt is deemed uncollectable and treated as a loss for accounting purposes. But charging off a debt does not diminish the legal right of the original creditor to collect the full amount of the debt." *Hinkle v. Midland Credit Management, Inc.*, 827 F.3d 1295, 1297 (11th Cir. 2016) (internal citation omitted). After a debt is charged-off, a creditor can recoup its loses either by attempting to collect on the debt itself or by selling the debt to a third-party at a discounted price. "The buyer of a debt on the secondary debt market enjoys essentially the same prerogatives as did the original creditor." *Id.* at 1298.

contract, tort, statute, regulation, common law, or equity, or whether they seek legal or equitable remedies. All Claims are subject to arbitration whether they arose in the past, may currently exist, or may arise in the future. Arbitration will apply even if your account is closed, you pay us in full any outstanding debt you ow, or you file for bankruptcy. Also, controversies or disputes about the validity, enforceability, coverage, meaning, or scope of this agreement to arbitrate or any part thereof are subject to arbitration and are for the arbitrator to decide. . . .

[ECF No. 21-3].[3]

### III.   The Assignments

On July 31, 2021, Credit One assigned its right, title, and interest in the charged-off accounts identified in the data file named CreditOne_Fresh_Sherman_082021 (the "Data File") (the "Data File Accounts") and the receivables relating to those accounts (the "Data File Receivables") to MHC Receivables, LLC ("MHC").[4] [ECF Nos. 21-1 ¶ 10, 21-4 pp. 3-5]. Plaintiff's Account was included in the Data File. [ECF Nos. 21-1 ¶ 11, 21-5, 21-8].

On August 17, 2021, MCH assigned its right, title, and interest in the Data File Accounts to Sherman Originator III LLC ("SOLLC III"), [ECF Nos. 21-6 ¶ 10,[5] 21-9 p. 11],[6] and assigned its right, title, and interest in the Data File Receivables to FNBM, LLC ("FNBM"). [ECF No. 21-9 p. 7].[7] FNMB then transferred its rights in the Data File Receivables to SOLLC III. [ECF No. 21-9 p. 9]. As a result, SOLLC III held the rights to the Data File Accounts and the Data File Receivables—including Plaintiff's Account. [ECF No. 21-6 ¶ 9].

---

[3] The Card Agreement does not mandate arbitration for claims filed in small claims court and, as notable here, does not permit class arbitration. [ECF No. 21-3].
[4] Credit One effectuated the assignments via two agreements. The first transferred to MCH all of Credit One's rights in (i) Data File Accounts; (ii) account level media, including account applications, statements, and terms and conditions; and (iii) all claims or rights arising out of the Data File Accounts including, "all claims and rights afforded by each Account by virtue of that Account's corresponding terms and conditions." [ECF No. 21-4 p. 3]. The second transferred to MCH all of Credit One's rights in (i) the Data File Receivables and (ii) "all claims or rights relating to each of those Receivables." [ECF No. 21-4 p. 5].
[5] Ms. Sexton attests that all documents attached to her Declaration are business records that are maintained on LVNV's behalf by Resurgent Capital Services, LP (LVNV's master servicer and authorized agent) and were kept and maintained in the course of LVNV's regularly conducted business activity. [ECF No. 21-6 ¶ 3].
[6] This included all rights in (i) the Data File Accounts, (ii) account level media, including card agreements, and (iii) "all claims or rights arising out of or relating to the accounts." [ECF No. 21-4 p. 7].
[7] This included "all claims or rights arising out of or relating to the [Data File] Receivables." [ECF No. 21-9 p. 11].

On August 17, 2021, SOLLC III transferred its right, title, and interest in the Data File Accounts and Receivables to Sherman Originator ("SOLLC"). [ECF No. 21-7].[8] By the same agreement, SOLLLC transferred its rights, title, and interest in the Date File Accounts and Receivables to LVNV. *Id.* By this final transfer and assignment, LVNV held the rights to Plaintiff's Account. [ECF No. 21-6 ¶¶ 5-10].

IV.   **This Action**

On December 3, 2023, Plaintiff filed this action in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida against twenty-two defendants, including LVNV, Credit One, SOLLC, SOLLC III, and MHC Receivables (the "Complaint"). [ECF No. 1-4]. The Complaint alleged predatory lending practices and raised claims, among others, for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), the Florida Communications Fraud Act ("FCFA"), and the Florida Consumer Collection Practices Act ("FCCPA"). *Id.* On February 29, 2024, the action was removed to this Court based on the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453. On April 1, 2024, Defendants moved to compel arbitration pursuant to the Credit Card Agreement (the "First Motion to Compel"). [ECF No. 7].

Before the Court ruled on the First Motion to Compel, Plaintiff filed an Amended Complaint only naming LVNV as a defendant and raising class claims for violations of Florida Statute § 687.147(1) (usury and loansharking), FDUTPA, the FCFA, the FCCPA, and for malicious prosecution and declaratory judgment. [ECF No. 10]. After answering the Amended Complaint, LVNV filed the Motion to Compel based on the Card Agreement's arbitration provision. In response, Plaintiff does not dispute the existence of the Card Agreement or the

---

[8] By the Transfer and Assignment Agreement, SOLLC III assigned to SOLLC "all of its right title and interest in and to the receivables and other assets (the "Assets") identified on Exhibit A, in the Receivable File . . . delivered by MHC . . . and FNBM… for purchase by SOLLC III" [ECF No. 21-7]. By the same agreement, "SOLLC, transfer[ed] [and] assign[ed] . . . to LVNV . . . the above mentioned Assets." *Id.*

arbitration provision therein. Rather, Plaintiff contends that there is a disputed issue of fact as to whether the Card Agreement was conveyed (assigned) to LVNV and that, as a result, the Court should defer ruling on the Motion to Compel until Plaintiff has an opportunity to conduct arbitration-specific discovery.

## LEGAL STANDARDS

The FAA provides that written contractual arbitration agreements involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. "The FAA places arbitration agreements on equal footing with all other contracts and sets forth a clear presumption—'a national policy'—in favor of arbitration." *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). "Arbitration provisions will be upheld as valid unless defeated by fraud, duress, unconscionability, or another generally applicable contract defense." *Id.* (citation and internal quotation marks omitted).

Under the FAA, a party may petition the district court to enforce a written arbitration agreement. 9 U.S.C. § 4. In considering a motion to compel arbitration, a court considers whether "(1) a written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived." *Curbelo v. Autonation Ben. Co., Inc.*, 14-CIV-62736, 2015 WL 667655, at *2 (S.D. Fla. Feb. 17, 2015) (citations omitted). When reviewing such motions, courts apply a "summary judgment-like standard." *Larsen v. Citibank FSB*, 871 F.3d 1295, 1308 (11th Cir. 2017). Accordingly, "a court may conclude as a matter of law that parties entered into an arbitration agreement only if there is no genuine dispute as to any material fact concerning the formation of the arbitration agreement." *Id.* (internal quotation omitted). "A dispute unsupported by the evidence or created by evidence that

5

is 'merely colorable' or 'not significantly probative' is not 'genuine.'" *Lawhon v. Aaron's, Inc.*, No. 8:19-cv-2333, 2020 WL 2219665, at *6 (M.D. Fla. May 7, 2020) (quoting *Bazemore v. Jefferson Capital Sys., LLC,* 827 F.3d 1325, 1329 (11th Cir. 2016)). "Conclusory allegations that lack specific, supporting facts lack probative value" for a party opposing a motion to compel arbitration. *Id.* "The Court may consider matters outside the pleadings, and views all facts in a light most favorable to the nonmovant." *Santiago v. Neno Research, Inc.*, No. 8:24-CV-01330, 2024 WL 4625783, at *2 (M.D. Fla. Oct. 30, 2024) (citing *Hearn v. Comcast*, 992 F.3d 1209, 1215 n. 3 (11th Cir. 2021)).

## DISCUSSION

LVNV argues that, pursuant to the Card Agreement, Plaintiff is required to arbitrate this dispute. In response, Plaintiff does not dispute that he opened the Account or that the Card Agreement contains a mandatory arbitration provision. Rather, Plaintiff's primary argument is that the Court cannot determine whether LVNV can enforce the Arbitration Provision because the record is not clear as to the assignments.

**I.      The Court Determines the Existence of an Agreement**

LVNV argues that the issue of whether there is a valid assignment, and therefore an agreement to arbitrate between it and Plaintiff, is for the arbitrator. On this issue, the Court disagrees.

In determining the validity of an agreement to arbitrate, the Supreme Court has noted that, in most circumstances, courts decide "certain gateway matters, such as whether the parties have a valid arbitration agreement at all . . . .'" *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). The FAA, however, "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc.*

*v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). *See also Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (holding that "parties may agree to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement."). "An agreement to arbitrate gateway questions is often referred to as a delegation agreement . . . because such a provision 'delegates the resolution of disputes about the arbitrability of the parties' claims to an arbitrator.'" *Scherer v. Hyundai Capital America, Inc.*, No. 22-CV-61014, 2022 WL 17488420, at * 3 (S.D. Fla. Nov. 22, 2022) (quoting *Attix v. Carrington Mortg. Servs., LLC,* 35 F.4th 1284, 1295 (11th Cir. 2022)) (report and recommendation adopted by 2022 WL 17486330 (S.D. Fla. Dec. 7, 2022)).

However, "even when a delegation provision is present, courts must still determine 'at the outset' whether an agreement exists at all." *Id.* (quoting *Newman v. Plains All Am. Pipeline, L.P.,* 23 F.4th 393, 398 (5th Cir. 2002). "After all, parties cannot delegate disputes over whether an agreement even exists between them (for the very reason that there is a dispute about whether an agreement existed in the first place)." *Id. See also Lavinge v. Herbalife, Ltd.,* 967 F.3d 1110, 1118 (11th Cir. 2020) ("However, the Act requires a court to send threshold questions of arbitrability to an arbitrator only when the parties have agreed to so do. Because there was no contract, the aggrieved distributors have not agreed to anything with the top distributors"); *Reiterman v. Abid*, 26 F. 4th 1226, 1231 (11th Cir. 2022) ("Courts must decide any challenges to the existence of the contract or to the validity of the arbitration clause standing alone before compelling arbitration."); *Bazemore,* 827 F.3d at 1333 (noting that absent a valid, enforceable agreement to arbitrate, a court cannot compel parties to participate in arbitration). Here, Plaintiff does not dispute that, via the Card Agreement, he and Capital One agreed to arbitrate. He does, however dispute whether he and LVNV have an agreement to arbitrate based on the assignments. This is a question for the Court

7

to decide.[9]

## II. There is a Valid Arbitration Agreement Between Plaintiff and LVNV

The existence of an arbitration agreement between parties is determined by state contract law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The Card Agreement provides that Nevada law governs any State law issues. *See* [ECF No. 21-3]. "Under Nevada law, 'an assignment operates to place the assignee in the shoes of the assignor and provides the assignee with the same legal rights as the assignor had before assignment.'" *Mollison v. LVNV Funding, LLC*, No. 3:18-cv-01023, 2018 WL 11326704, at * 5 (S.D. Cal. Dec. 14, 2018) (quoting *First Fin. Bank v. Lane*, 130 Nev. 972, 978 (2014)). *See also Am. Fire & Cas. Co. v. Unforgettable Coatings, Inc.,* No. 221CV1555, 2023 WL 2930042, at *2 (D.Nev. Apr. 13, 2023) ("An assignee stands in the shoes of the assignor, and, if the assignment is valid, has standing to assert whatever rights the assignor possessed.") (internal quotation omitted). "In the absence of statute or a contract provision to the contrary, there are no prescribed formalities that must be observed to make an effective assignment." *Mollison*, 2018 WL 11326704, at *5 (quoting *Easton Bus. Opp. v. Town Executive Suites*, 126 Nev. 119, 127 (Nev. 2010). For the assignment to valid, "[t]he assignor must manifest a present intention to transfer its contract right to the assignee." *Id.* (quoting *Easton*, 126 Nev. at 127).

Based on the record before it, the Court finds that there are no undisputed material facts as to the validity of the assignment of Plaintiff's Accounts—including the rights and obligations set

---

[9] LVNV cites *Zirpoli v. Midland Funding, LLC*, for the proposition that "a challenge to an assignment [i]s one of contract enforceability" to be decided by the arbitrator. 48 F.4th 136, 145 (3d Cir. 2022). The Court finds that *Zirpoli* does not comport with Eleventh Circuit precedent mandating that Courts must first determine whether a valid agreement exists. *See e.g. Reiterman*, 26 F.4th at 1231. Indeed, the Court finds the dissent in *Zirpoli*'s reasoning more in line with Eleventh Circuit law. *See* 48 F.4th at 146 ("Zirpoli never disputed the enforceability of his agreement with OneMain. Rather, he insists that he never had an agreement with Midland [OneMain's assignee]. And it is Midland, not OneMain, that seeks to compel arbitration here. . . . Today's holding confuses how we analyze the formation of arbitration agreements. Courts cannot start by asking, 'Was an agreement formed?' Rather, they must ask, 'Was an agreement formed *between these parties*?") (dissent) (emphasis in original).

forth in the Card Agreement—to LVNV. The Weise and Sexton Declarations and attached documents clearly establish that, through the chain of assignments, LVNV now stands in the shoes of Credit One and may assert its right to proceed in arbitration under the Card Agreement.[10] Indeed, several courts have examined assignments nearly identical to the one here—with the only difference being the pool of accounts transferred from Credit One ultimately to LVNV—and found those assignments valid. *See e.g. Mollison*, 2018 WL 11326704 at *6 ("Defendants have provided sufficient evidence showing that Defendant LVNV is the assignee of the [Credit One] agreement."); *LVNV Funding LLC v. Ingram,* No. 24AP-128, 2025 WL 463771, at * 5 (Ohio 10th Dist, Feb. 11, 2025) (finding chain of assignments from Credit One to LVNV valid); *Jones v. Financial Recovery Service, Inc.*, No. 20C2843, 2020 WL 6255475, at * (E.D. IL. Oct. 23, 2020) (granting motion to compel arbitration based on identical assignment chain with different pool of accounts); *Cobb v. Resurgent Capital Services, LP, et al.*, No. 19-cv-5833, 2021 WL 321408, at *4 (N.D. Ga. Feb. 1, 2021) ("Because Credit One assigned Plaintiff's Account to Defendant LVNV (albeit indirectly through a string of intermediary assignees), Defendant LVNV does in fact stand in [Credit One's] shoes as its assignee and now has all the same rights regarding [Plaintiff's] account as [Credit One] had when the Cardmember Agreement was formed.") (internal quotation omitted).

Plaintiff argues, without support, that additional discovery is necessary before the Court can make this determination. The Court disagrees. Plaintiff has provided no evidence—only conclusory statements and conjecture—to create a disputed issue of material fact as to the validity of the assignments or LVNV's right to seek arbitration under the Agreement. *See Lawhon*, 2020 WL 2219665 at *6 ("Conclusory allegations that lack specific, supporting facts lack probative

---

[10] Plaintiff takes issue with the fact that there were multiple assignments in the chain occurring on the same date but cites no law prohibiting multiple assignments or assignments one the same date.

value for a party opposing [a motion to compel arbitration].").[11] Therefore, Plaintiff's request for additional discovery shall be denied; and, based on the valid assignment of Credit One and Plaintiff's Card Agreement to LVNV, the Motion to Compel shall be granted.

## CONCLUSION

Based on the foregoing, it is **ORDERED and ADJUDGED** as follows:

1. Defendant's Motion to Compel Arbitration and Stay Proceedings, [ECF No. 21], is **GRANTED**;

2. Plaintiff's Cross-Motion to Defer Ruling Pending Arbitration-Specific Discovery, [ECF No. 23], is **DENIED**;

3. This case is **STAYED** and closed for administrative purposes. Within fourteen (14) days after the arbitration proceedings are concluded, the parties shall file a status report with the Court.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 21st day of March, 2025.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

[11] Plaintiff appears to argue that the Court should not consider the declarations and assignments because they are photocopies of the declarations and assignments submitted in support of the First Motion to Compel. Plaintiff provides no support for this proposition. Moreover, Plaintiff's argument that Ms. Sexton's declaration is deficient because she is not an employee of LVNV is misplaced. Ms. Sexton clearly explains that she is "authorized to speak on [LVNV's] behalf on the matters contained in [the Declaration] and that she makes the "Declaration from [her] own personal knowledge of the matters set forth [therein] or from personal knowledge gained from [her] review of the business records of LVNV, which were made by, or from information transmitted by, a person with knowledge of the events described therein, at or near the time the events described, and which are kept in the ordinary course of the regularly conducted business activity of such person and LVNV, and for which it is the regular practice of that business activity to make such records." [ECF No. 21-6].